RIVES, J.
It is usually unsafe and hazardous to seek to classify adjudicated cases upon any complex question of law, and to extract from them rules of general application. So much of the reasoning in such cases is due to their diversities, that error is .likely to creep into any generalization of them, and vitiate the results of an analysis that would ambitiously seek to reduce them to a system, and tempt the cautious inquirer .to overlook thie differences' of fact that modify and control their application. *It is, therefore, wiser in the main to investigate and decide each case upon its own peculiar state of facts, than by too general statements or deductions to incur the risk of being betrayed into too abstract reasoning. Still it is possible and advisable to sift the reasonings of judicial decisions, and eliminate from them leading principles to guide and control us in' legal investigations, provided we fail not to weigh and estimate essential distinctions between them; and admit the discrimina-tions, which the change of facts requires.
So numerous are the cases upon the liability of official superiors for the misconduct or tortuous neglect of their subordinates, that while perfectly sensible of the danger of generalizing upon them, I deem it best to approach the examination, of this record by an attempt to classify the more important of these cases upon certain broad and general principles, that must be clearly understood and established and applied in the decision of this appeal.
I shall avoid any minute analysis, and shall pursue the ramifications of this interesting doctrine -.no farther thaii it shall seem to me necessary to’ the ends of this cause. In this way I propose to escape the mischiefs to which I have pointed, and to procure valuable guides in the conduct of the, argument.
The doctrine of liability in such cases has been tersely stated by Td. Brougham, in the following simple language: ‘ ‘ The rule of liability and its reason I take to be this; I am liable for what is done for me and under my orders by the man I employ, for I may turn him from that employ when I please; and the reason that I am liable is this, that by employing him I set the whole thing in motion ; and what' he does being one or my benefit and under my direction, I am responsible for the consequences of doing it.” It is thus seen that this principle is distinctly predicated of the relation of *and or master and servant; but where this relation does not exist, and a contractor intervenes, it is held, to be a case of independent, substituted responsibility intercepting legal recourse against the superior. The application, however, of this distinction has been found a matter of great nicety and perplexity; and as it has no bearing that I perceive *385 upon this record, I am saved the necessity of referring- to or descanting upon the numerous cases that cluster upon this point. Confusion dwells upon it; and it must be left to future decisions to shed light upon it and dispel the uncertainty in which it is held.
Another exemption from this liability, exists in behalf of all public, officers of the government in the performance of their public functions, including all grades of officers, whose trust proceeds from and whose responsibility is due to the government. 'Their immunity from all liability for the misconduct, negligent and omissions of their subordinates, rests upon motives of public policy, the necessities of the public service and the perplexities and embarrassments of a contrary doctrine. Still, these officers are held responsible for their own acts in the abuse or transgression of their authority, or in default of proper and reasonable care in the choice of their agents or in the superintendence of them in the discharge of their allotted duties. But it is now firmly established that the doctrine of re-spondeat superior does not apply to them. Lane v. Cotton, Ld. Raym. R. 646; Whitefield v. Lord Le Despencer, Cowp. R. 754; Dunlop v. Monroe, 7 Cranch’s R. 242; &c., &c.
A kindred exemption, and one directly relevant to the present issue, is extended, by virtue of the same principle, to municipal corporations, as constituting a part of the government of the country. This proposition in its terms points to an important distinction. The functions *of such municipalities are obviously two-fold; first, political, discretionary and legislative, being such public franchises as are conferred upon them for the government of their inhabitants and the ordering of their public officers, and to be exercised solely for the public good rather than their special advantage; and secondly, those ministerial, specified duties, which are assumed in consideration of the privileges conferred by their charter. Within the sphere of the former, they are entitled to this exemption ; inasmuch as the corporation is a part of the government to that extent, its officers are public officers, and as such entitled to the protection of this principle; but within the sphere of the latter, they drop the badges of their governmental offices and stand forth as the delegates of a private corporation in the exercise of private franchises, and amenable as such to the great fundamental doctrine of liability for the acts of their servants. This distinction might seem at first sight fanciful and shadowy; but when pursued through the different cases,it will be found to be real and substantial. Wherever it can be said that distinct duties are imposed upon a corporation, purely ministerial and involving no exercise of discretion, the same liability attaches as in the case of private persons owing the same service under the law. To this second class belong numerous cases of recovery against corporations for the torts of negligences of their servants; among which it is only necessary to cite some of the more recent; such as Scott v. Mayor &c. of the City of Manchester, 2 Hurl. & Norm. Exch. R. 204; Bailey v. The Mayor of the City of New York, 3 Hill’s N. Y. R. 531; The Mayor of the City of New York v. Furze, 3 Id. 612; Weightman v. Corporation of Washington, 1 Black’s U. S. R. 40; Chicago City v. Robbins, 2 Black’s U. S. R. 418; and a very late case from the House of Lords, The
Mersey Dock Harbor *Board v. Penhallow & others, reported in the Jurist for 1866, part 1, p. 571, containing a review and comparison of English adjudications upon this subject. These decisions proceed on the ground, that where a municipal corporation acts in the exercise of powers or the discharge of duties, in nowise discretionary or governmental, but purely ministerial in their character, it incurs, like a private person, the common law liability for the acts of its servants; and that it does not matter, as was once intimated, if there be the absence of special rewards or advantages, it being considered and allowed that such gratuitous function is to be regarded as a burthen accepted under the charter in consideration of its privileges.
But these cases do not conflict with the first class, under which this immunity pertains to municipal corporations within the sphere of their political functions. On the contrary, this is explicitly conceded in the case of Bailey v. The Mayor of the City of New York, 3 Hill’s N. Y. R. 531. Nelson, Ch. J., in delivering the opinion of the court in this case, says: ‘‘The distinction is quite clear and well settled; and the process of separation practicable. To this end, regard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, quoad hoc, is to be regarded as a private company.”
Let us now consider briefly some of the leading authorities for the exemption of municipal bodies, or statutory boards of commissioners from the doctrine of respon-deat superior. The leading case upon this subject is Hall v. *Smith, 2 Bing. R. 156, 9 Eng. C. L. R. 357. The judgment of Lord Chief Justice Best in this case has never been doubted, and is now recognized as authority upon this point. Story on Agency, ch. xii, \ 321, and note. It places this exemption on grounds of public policy lest the public service should suffer by subjecting public officers to a responsibility for subordinates, whom they must employ, and who are seldom under their immediate control. The distinctions, by virtue of which this indulgence is extended to corporations in their public, sovereign franchises, is stated and approved in Moodalay v. The East India Company, *386 1 Bro. Ch,. R. 469. The master of the rolls admitted that no suit would lie against a sovereign power for anything done in that capacity; but he denied that the defendants came within the rule. ‘‘They have rights, ’’ he observed, “as a sovereign power; they have a,lso duties as individuals; if they enter into bonds in India, the sums secured may be recovered here. So, in this case, as a private company they have entered into a private contract to which they must be liable. ’ ’
Ch. J. Parsons in Riddle v. Proprietors of the Locks and Canals on the Merrimac, 7 Mass. R. 1869, 545, makes the distinction between quasi corporations for public purposes and corporations created for the benefit of the corporators themselves, and holds the former irresponsible in a civil action. The same ground was taken in a later case of Mower v. Inh. Leicester, 9 Mass. 247. In Morey v. The Town of Newfane, 8 Barb. R. 645, Selden, J., approved this distinction and said: “To subject these quasi corporations, whose duties are imposed exclusively for the benefit of the public, for a mere non-feasance, to a multitude of private suits, would, I think, be a great and unnecessary hardship.” In the case of Fowle v. Common Council of Alexandria, 3 Pet. U. S. R. 398, Chief Justice Marshall denied that “a- legislative corporation, ^established as a part of the government of the country, was liable for losses by a non-feasance, by an omission of the corporate body to observe a law of its own, in which no penalty was provided. ”
This question has also passed under review of the courts of Alabama, Bouisiana, and Kentucky, and has been settled upon the principle already announced. The case of Dargan v. Mayor &c. of Mobile, 31 Alab. 469, and the case of Stewart v. The City of New Orleans, 9 La. Ann. R. 461, are identical, being actions against the municipal corporations for the loss of slaves killed by police officers, &c. The actions were defeated, and on this very distinction between the liability of municipal corporations for acts of its officers in the exercise of powers which it possesses for public purposes and which it holds as a part of the government of the country, and those which are conferred upon it for private purposes. To the same effect as the case of Prather v. City of Lexington, 13 B. Monr. R. 559; in which it was determined that ‘ ‘the officers of a city are quasi civil officers of the government, although appointed by the corporation. They are personally: liable for their malfeasance or non-feasance in office; but for neither is the corporation responsible.”
I have thus reviewed and harmonized the authorities, so far as they seem to me to bear upon the question we have to decide in this case. The recovery here was for the value of a slave, alleged to have been loss by neglect of proper custody and attendance while in the hospital of the city, to which he had been committed for the small-pox, and from which he escaped and soon died by reason of such neglect and exposure. To ascertain whether such a recovery is sustainable, we must first look into the charter of the city to fix the character of the corporation, and then into the ordinance establishing the ^hospital, to ascribe to it its true character and function. It was well said in the case of The Mersey Docks and Harbor Boards v. Penhallow and others, “that in every case, the liability of a body created by statute must be determined under a true interpretation of the statutes under which it is created.”
The charter of the city, it will be seen, creates a local government for its inhabitants ; a council for its legislature; a court of hustings for its judiciary, and a mayor for its executive and head of police. It ordains the election of these officers, and, by the 23d section, declares “all the estate, rights, titles and privileges, and all the ■ funds, revenues and claims of the city, shall be under the care, management, control and disposition of the council; and all the corporate powers, capacities, franchises and immunities of the city, shall be exercised by the council or under its authority, unless it be otherwise expressly provided. ’ ’ The charter then proceeds, by special enumerations, to vest the council with powers over gas and water works, streets, wharves, landings and docks; schools, libraries and Athenaeum; nuisances; regulations for weighing, measuring and gauging; general police in suppression of riots and unlawful assemblies; taxation and licenses; borrowing money and providing a sinking fund for its redemption; subscriptions to public works, &c., &c. The legislature of the state has thus chosen to impart to this corporation the highest attributes and functions of political sovereignty, so that it is ‘imperium in imperio, ’ and may be aptly termed in the language of Judge Marshall already quoted, “a legislative corporation, established as a part of the government of the country.” It cannot be denied that it is as well a municipal government as a municipal corporation.
We come next to inquire in what sense we are to regard “the ordinance concerning health and the city *hospital, ” under which the responsibility of the city is said to arise. Was it the exercise of a discretionary legislative power, as much as the establishment of a police, and thereby saving the city from accountability for the misconduct or neglects of its subalterns, as in the actions against the cities of Mobile and New Orleans already cited? or was it the fulfilment of a legal ministerial duty and the exercise of a private franchise subjecting the corporation, as a private one, to the general liability of a superior? It does not seem to me to admit of a doubt as to which category this ordinance belongs. It is in pursuance of a statute, ch. 86 of the Code, providing against the spread of contagious diseases, and arms the counties and towns of the state with large powers to attain this end, rightfully subordinating to the public safety the usual immunities of persons and property. In the *387 passage of this ordinance, then, the council, with whom are lodged all corporate powers and franchises, was legislating, by directions of law, for the sanitary police of the city, and providing the usual accommodations and public charities for the care and cure of the diseased. Under such a state of facts to require the city to answer for the negligence or misconduct of the superintendent, matron, nurses or attendants of the hospital, would seem to me to subvert the fundamental doctrines of the law, as I understand and have sought to expound them. Analogy, I know, is a dangerous resort in argument; yet I cannot forbear saying that, if this recovery could be made, I do not perceive why, by parity of reason, the state should not be held liable, through its public functionaries, in civil actions at the suit of individuals, for losses or torts occurring in the management of its departments, and public institutions under its immediate control and '.supervision. It cannot be denied that in the municipal government of this city, *the council occupies, towards its hospital, relations quite similar to those of the general assembly towards its asylums for the insane, the blind, and deaf mutes.
I am, therefore, of opinion that the demurrer to the evidence in this cause should have been sustained, and judgment given for the defendant. Having disposed of the case on this leading ground, I am saved the necessity of saying anything as to the questions of pleading and practice made by this record.
The other judges concurred in the opinion of Rives, J.
Judgment reversed.